## WILLIAM MEREDITH *against* THOMAS SHEWALL.

IN ERROR.

The sheriff is a competent witness to prove the words, "Proceedings stayed by plaintiff's attorney," which had been endorsed on a writ of *liberari facias,* and signed by the sheriff, and which were struck out or erased by a line run through them, though still legible, were his return to that writ, and that *he* had not struck them out.

It is competent to prove, and that by the sheriff, that upon such writ of *liberari facias,* he did not deliver the land to the plaintiff; although it was set forth in the inquisition returned with the writ, that the sheriff and inquest had caused to be delievered the property extended, "until the debt and damages in the same writ mentioned, together with the interest, &c. be fully levied."

An inquest under a *liberari facias* can only determine the value of the land, the yearly rents and profits, and the term during which it shall be extended. The delivery of the land is the executive duty of the sheriff alone.

ERROR to the Court of Common Pleas of Fayette county; where a verdict and judgment were had in favour of the defendant, to which the plaintiff took this writ.

The cause was argued by

*Irwin,* for the plaintiff in error, and by

*Ewing,* for the defendant in error.

The facts of the case are fully stated in the opinion of the court, which was delivered by

SMITH, J.—The parties entered an amicable action, to try their right to the proceeds arising from the sale of the real estate of a certain *Stewart H. Whitehill,* which they respectively claimed under judgments against him. All objections to the form of suit were waived; and the plaintiff claimed two hundred and eleven dollars of those proceeds, (which sum, it is agreed, is in the defendant's hands,) as so much money had and received by the defendant to his use. The cause was tried on the 8th of March, 1828. On the trial, the plaintiff gave in evidence the record of an action to December term, 1818, in the Common Pleas of Fayette county, between *Maurice* and *William Wurtz,* plaintiffs, and the said *Stewart H. Whitehill,* defendant, in which the former had obtained a judgment on the 16th of January, 1819, for five hundred and ninety-eight dollars and seventy-eight cents, and had afterwards transferred it to the plaintiff, *Meredith,* a *plurius fieri facias* thereon to March term, 1820, which was returned "levied on fifty acres of land, &c. inquisition held and extended."

The defendant then gave in evidence the inquisition of extension on the said last mentioned writ, and a *liberari facias* thereon to March term, 1821, with the inquisition attached.

(William Meredith *v.* Thomas Shewall.)

The plaintiff then offered *Daniel P. Lynch*, former sheriff, to prove that the words, "Proceedings stayed by plaintiff's attorney," which had been endorsed on the writ of *liberari facias*, signed *Daniel P. Lynch*, and which were struck out or erased, by a line run through them, though they were still legible, were his return to that writ; and that those words were not struck out by him; and to prove also, that there was no actual delivery of the property specified in the *liberari facias* to *Maurice* and *William Wurtz*.

This being objected to by the defendant's counsel, the offer was overruled by the court, and a bill of exceptions sealed.

The sole question before us is, whether the sheriff was a competent witness to prove that his return to the *liberari facias* had not been erased by himself, and that he did not in fact, deliver the possession of the land.

We think he was a competent witness for these purposes, and ought to have been received.

The general rule undoubtedly is, that a sheriff cannot be admitted to contradict his return; as to himself, it is conclusive; but it is not, under all circumstances, conclusive as to others. But in regard to the first branch of the offer, *Daniel P. Lynch* was not called to contradict, he was called to support, the return which he had made.

He had, in pursuance of his duty, endorsed it on the writ, which he delivered into court, and which, when shown, exhibited it erased; and he was brought forward to testify that *he* did not erase or strike it out. Certainly nothing can be plainer than that in proving this, he would not impugn the record of his official act, but maintain it. It would lead to the most mischievous consequences, if courts were precluded from all inquiry relative to matters of this description. In *Hill and wife* v. *Wigget*, 2 *Vern.* 547, an entry in the stewart's book, and parol proof by the foreman of the jury, were received as good evidence, that a *feme covert* surrendered her *whole* estate, although the surrender upon the roll, and the admission thereon, were but of a *moiety*.

In the present case it was evidently proper for the court and jury to know the truth of this transaction. If the sheriff did not alter his return, who did? Was it done with the consent of the parties, fraudulently or otherwise? That the sheriff did not alter it, was the first step in the investigation; and who so likely or proper to prove that negative fact as the sheriff himself? The circumstance of the erasure alone, apparent upon the production of the writ, was sufficient to authorise an inquiry into the fact, in order to ascertain when, by whom, and wherefore it had been made. The object of the offer was to restore to the proceedings what had been improperly obliterated, and it would indeed be a singular way of protecting records, to shut out the most direct means of proving their violation. It is clear, then, that the sheriff

(William Meredith *v*. Thomas Shewall.)

should have been admitted to prove, that he had made his return as it originally stood in the endorsement on the writ, and that he did not erase or alter it.   There is nothing in the inquisition, which, in our opinion, fortifies the objection to this part of the offer, because after the inquest had discharged their appropriate functions, the sheriff might, without repugnance or inconsistence, have stayed further proceedings, by order of the plaintiff, as will be explained in considering the residue of the offer.   This was to prove by the sheriff, that he did not in fact, deliver the land mentioned in the *liberari facias* to *Maurice* and *William Wurtz*.   It is said that this was properly rejected, because the sheriff returned in the body of the inquisition, that he had delivered the land to the plaintiffs, and it is contended that although he did not *actually* deliver it to them, or ever paid or satisfied their judgment, (the oldest lien,) yet they are concluded by such return, which operates as a discharge of their judgment.   As I have said before, the conclusive effect of a regular return of the sheriff, is not to be disputed.   It is in general of so high regard, that no averment should be admitted against it. But even when regular, it is not to be extended beyond its reasonable intendment, to prejudice the interests of parties.   Where a sheriff returns " goods levied," without any specification, the plaintiff is not precluded, nor those claiming under him, from showing that he was not satisfied. 5 *Bin* 206.   And when a return is irregular and illegal, it may be inquired into and impugned.   In *Weidman* v. *Weitzel*, 13 *Serg. & Rawle*, 96, a sheriff's return to a *fieri facias* of " debt and costs paid," made two years out of time, and less than a year after the commencement of the suit in which it was given in evidence, was held to be unworthy the name of a regular return, by which the plaintiff should be concluded.   So in a  case between *Pennock's Executor* and *Griffith* and *George Carr*, (not yet reported,) it was decided at the last term at Sunbury, by this court, that a return of *nulla bona* to *fieri facias*, which had been retained in the sheriff's hands, for six years, was not conclusive; that the purchaser of the defendant's property, might show that the plaintiff in the *fieri facias* had been satisfied; and the sheriff himself was examined touching the facts.   See also 1 *Maule & Selw.* 599. 9 *John. Rep.* 96.   Here, in the principal case, the alleged return of the sheriff, with regard to the delivery of the land, is contained in the inquisition under the *liberari facias;* and before he could deliver the land to the plaintiffs, a proper inquisition was necessary under this writ.   The office of this inquisition is distinct from that under the *fieri facias*, it is to ascertain the value of the land, and the clear yearly rents and profits beyond all reprises, and the number of years within seven, that will be necessary to satisfy the debt, damages and costs; according to which the sheriff must deliver possession, and return his writ with the inquisition annexed.   *This* inquisition does more than perform its legi-

(William Meredith *v.* Thomas Shewall.)

timate functions, it states that the sheriff and inquest had caused to be delivered to *Maurice* and *William Wurtz* the property extended " *until* the debt and damages in the same writ mentioned, together with the interest thereof, be fully levied;" whereas the inquest under a *liberari facias* can only determine the value of the land, the yearly rents and profits, and the term during which it shall be extended. The jury have nothing to do with the delivery of the land, that is the executive duty of the sheriff alone.   So, *it* was said in *Sparron* and *Mattersock and others, Cro. Car.* 319, were all the precedents.   It is evident, then, that the act of delivering the land must follow the inquisition, even if regularly taken under the *liberari facias;* the proceedings may well be stayed subsequently to the inquisition, and before actual delivery; and the sheriff may return the order to stay them, as his reason for not delivering pursuant to the exigency of the writ.   The plaintiff proposed to show that the proceedings were stayed, that the land was not actually delivered, and that his judgment was not satisfied. The answer was, that though the proceedings were stayed, though the land was not delivered, and though his judgment was not satisfied in point of fact, yet the return in the inquisition precluded him from showing the fact, because that return was conclusive. It is apparent, however, that the irregularity and illegality of that proceeding are such as to deprive it of all pretensions to legal sanctity, and to remove any impediment which a regular and legal return might have presented to the admission of the offered testimony.   The alleged return is indeed nothing more than the inquisition of the sheriff and jury, and when no actual delivery of the land was made, it would be most strange, if the inquisition, which regularly and legally precludes the delivery by the sheriff, should be held to preclude the proof relative to that subsequent fact, when it was offered to show, by the sheriff himself, that he did not actually deliver the land.   The plaintiff should have been permitted to prove what he proposed, and in rejecting the offer under consideration, the court below erred.

Judgment reversed, and a *venire de novo* awarded.